UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENIFER OROZCO ACOSTA,<br>Petitioner,<br>v.<br>PAMELA BONDI, et al.,<br>Respondents. | Case No. 25-cv-09601-HSG<br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br>Re: Dkt. No. 2 |

Petitioner Jenifer Orozco Acosta is an asylum seeker from Colombia who fled to the United States in December 2023. She was arrested by Department of Homeland Security ("DHS") agents following a routine hearing on Thursday, November 6, 2025 at the immigration court in San Francisco. That day, she filed a petition for a writ of habeas corpus as well as a motion for a Temporary Restraining Order ("TRO"), which was granted on the same day by the duty judge for the Northern District of California. Respondents were ordered to show cause why a preliminary injunction should not issue following the TRO's expiration.

The Court held a hearing on November 18, 2025. Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS** Petitioner's Motion for a Preliminary Injunction.

I. **BACKGROUND**

According to the record before the Court, Ms. Orozco Acosta fled her home country of Colombia and arrived in the United States in December 2023. Dkt. No. 1, Petition for Writ of Habeas Corpus ("Habeas Petition") ¶ 45. Immigration officials apprehended and released her on her own recognizance under 8 U.S.C. § 1226(a) after determining that she posed little if any flight risk or danger to the community. *Id.* In September 2024, Ms. Orozco Acosta timely filed an application for asylum, withholding of removal, and protection under the Convention Against

Torture, and she has complied with her ICE and immigration court requirements. *Id.* Ms. Orozco Acosta has not been convicted of a crime. *Id.*

On November 6, 2025, Ms. Orozco Acosta appeared at the immigration court in San Francisco for a master hearing. *Id.* at ¶ 46. During the hearing, the government orally moved to dismiss her pending case. *Id.* The immigration judge did not grant the motion; instead, he continued the hearing to allow Ms. Orozco Acosta to respond to the motion. *Id.* Moments after Ms. Orozco Acosta exited the courtroom, DHS agents arrested her. *Id.* at ¶ 1.

The same day she was detained, Ms. Orozco Acosta filed a petition for habeas corpus and a motion for a TRO, Dkt. Nos. 1, 2, which the Court granted. Dkt. No. 3. Respondents were ordered to release Ms. Orozco Acosta from the government's custody, to refrain from re-detaining Ms. Orozco Acosta without notice and a pre-deprivation hearing before a neutral decisionmaker, and to refrain from removing Ms. Orozco Acosta from the United States. Dkt. No. 3.

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## III. DISCUSSION

The Court finds that Ms. Orozco Acosta has shown that, at minimum, there are "serious questions going to the merits" of her procedural due process claim, that she is likely to suffer

2

irreparable harm absent preliminary injunctive relief, and that "the balance of hardships tips sharply" in her favor.[1] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014).

### A. Ms. Orozco Raises Serious Questions Going to the Merits of Her Claim

The Due Process Clause of the Fifth Amendment protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical constraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases). The Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

#### i. Ms. Orozco Acosta Has a Liberty Interest

Because the Court determines that the Due Process clause applies, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). It is well-settled that typically "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "This is particularly true when the interest is in liberty, the loss of which cannot fully be compensated after the fact." *Salcedo Aceros v. Kaiser*, 25-cv-06924-EMC, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025).

Courts considering this question apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976): "the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would

---

[1] Because the serious questions prong is satisfied as to Ms. Orozco Acosta's procedural due process claim, the Court does not reach the likelihood of success as to her substantive due process claim. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1139 (9th Cir. 2011) (declining to reach remaining claims after finding a serious question going to the merits of one claim).

entail." *Id.* at 335.

Respondents argue that the *Mathews* test does not apply for two reasons: (1) because the Supreme Court has not applied this test in the civil immigration detention context, and (2) because Ms. Orozco Acosta "lack[s] a liberty interest in *additional* procedures" beyond those provided for in 8 U.S.C. § 1225, "including a custody redetermination or pre-detention bond hearing." Dkt. No. 9 at 27.[2] The Court finds each of these arguments unpersuasive. First, the Ninth Circuit and others have consistently applied the *Mathews* test to non-citizens' due process challenges when the non-citizen has entered and been residing in the United States. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (collecting cases). Second, Respondents' statutory arguments fare no better. They advance a theory that Petitioner is an "an applicant for admission" and subject to expedited removal under 8 U.S.C. § 1225(b)(1), or alternatively, that she is "seeking admission" and subject to removal under 8 U.S.C. § 1225(b)(2). *See generally* Dkt. No. 9. For these reasons, Respondents argue, Ms. Orozco Acosta lacks a liberty interest and is subject to "mandatory detention." *Id.* at 9, 27. Respondents' theory repeats arguments that have been uniformly rejected by courts in this district. *See, e.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025); *Salcedo Aceros v. Kaiser*, 25-cv-06924-EMC, 2025 WL 2637503, at *8–12 (N.D. Cal. Sep. 12, 2025); *Jimenez Garcia v. Kaiser et al.*, 25-cv-06916-YGR, at *8–9 (N.D. Cal. Aug. 29, 2025); *Calderon v. Kaiser*, No. 5:25-cv-06695-AMO, 2025 WL 2430609, at *3 (N.D. Cal. Aug. 22, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *3–4 (N.D. Cal. Aug. 21, 2025).

The Court's own review finds no grounds for a different conclusion here. After initiating removal proceedings under § 1229(a), the government chose to release Ms. Orozco Acosta on conditional parole under §1226(a). In doing so, the government placed Ms. Orozco Acosta into a normal removal proceeding, not an expedited one, and it also chose not to detain her under § 1225(b). "Sections 1226(a) and 1225(b) cannot be applied simultaneously." *Salcedo Aceros*,

---

[2] Unless otherwise noted, all page numbers referenced herein are to the ECF page number at the top of the page.

4

2025 WL 2637503, at *8; *see also Valencia Zapata v. Kaiser*, -- F. Supp. 3d -- , No. 25-cv-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025); *Pablo Sequen v. Albarran*, --F. Supp. 3d -- , No. 25-cv-06487-PCP, 2025 WL 2935630, at *1–2 (N.D. Cal. Oct. 15, 2025). Like other courts in this district, the Court finds that the government cannot simply switch tracks and purport to subject Ms. Orozco Acosta to mandatory detention under § 1225(b) after it already released her under § 1226(a).

Ms. Orozco Acosta has a liberty interest that was created by the government after immigration officials released on her own recognizance under § 1226(a) when they determined she posed little if any danger to the community. Habeas Petition ¶¶ 45–47. By deciding to release Ms. Orozco Acosta from custody after she was initially apprehended, the government created "an implicit promise," on which she has reasonably relied, that her liberty "will be revoked only if [s]he fails to live up to the parole conditions [of her release]." *Morrissey*, 408 U.S. at 482. "The liberty of a person released from government custody is valuable and must be seen as within the protection of the Due Process Clause." *Pinchi*, 792 F. Supp. 3d at 1032 (quoting *Morrissey*, 408 U.S. at 482); *see also Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (petitioner's release under § 1226 created "protected liberty interest in remaining out of custody, which has only become more significant in the year since then"). Petitioner's private interest in her continued freedom from detention is therefore weighty.

Respondents principally rely on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), but the Court finds that case inapposite.[3] Unlike in *Thuraissigiam*, Ms. Orozco Acosta's habeas petition challenges her detention, not her "admission." *See Thuraissigiam*, 591 U.S. at 118 (explaining that "respondent fail[ed] to seek release" or dispute the validity of his confinement); *see also Salcedo Aceros*, 2025 WL 2637503, at *6 ("*Thuraissigiam*'s holding concerns the right to additional due process sought over admission determinations. It does not

---

[3] The Court likewise rejects Respondents' argument to the extent that it relies on *Matter of Jonathan Javier Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025). As an initial matter, the BIA decision is entitled to little deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). And the Court agrees with the reasoning of the "many district courts" that have found BIA opinion unpersuasive and at odds with the agency's "prior decisions and DHS's actions over the past 30 years." *Salcedo Aceros*, 2025 WL 2637503 at *12.

address the due process rights of a noncitizen to remain free once released.") And unlike Ms. Orozco Acosta, who has been in the country for nearly two years after being released under § 1226(a), the petitioner in *Thuraissigiam* had "succeeded in making it 25 yards into U.S. territory" before being detained for expedited removal under §1225(b). *Id.* at 114.

For similar reasons, the Court finds Respondents' reliance on *Ma v. Barber*, 357 U.S. 185 (1958), misplaced. The petitioner there likewise sought habeas relief to challenge denial of "admission," and she had also received a decision that was affirmed by the Board of Immigration Appeals that subjected her to "exclusion proceedings." 357 U.S. at 186. And there, the Supreme Court distinguished noncitizens "who have come to our shores seeking admission, such as petitioner [Ma], and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* at 187. Ms. Orozco Acosta falls into the latter category of noncitizens to whom the Supreme Court has long recognized "additional rights and privileges" extend. *Id.*

### ii. Risk of Erroneous Deprivation

The second *Mathews* factor, the risk of erroneous deprivation, also weighs in Ms. Orozco Acosta's favor. "Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." *Salcedo Aceros*, 2025 WL 2637503 at *12. Where the petitioner "has not received any bond or custody . . . hearing," "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, -- F. Supp. 3d --, No. 1:25-cv-00801-KES, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (quoting *A.E. v. Andrews*, No. 1:25-cv-00107-KES, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)). Civil immigration detention is permissible only to protect against danger to the community or to prevent a flight risk. *See Zadvydas*, 533 U.S. at 690. Respondents have offered no evidence that Ms. Orozco Acosta's detention would serve either purpose. And the evidence before the Court does not suggest that Ms. Orozco Acosta presents any danger to the community or any flight risk. After all, she has no criminal history and was detained after dutifully attending her master calendar hearing at immigration court. "Under these circumstances, there is significant risk that [the] curtailment of

1   liberty" that Ms. Orozco Acosta would suffer by her re-detention by ICE "w[ould] not [be]
2   justified by any valid interest." *Pinchi*, 792 F. Supp. 3d at 1035.

### iii. The Government's Interest

In response to the final *Mathews* factor, Respondents have not shown any persuasive countervailing interest in choosing not to provide a pre-detention hearing at this stage. If Respondents wish to detain Ms. Orozco Acosta notwithstanding her release nearly two years ago, they can provide a hearing before a neutral decisionmaker. It is undisputed that "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Salcedo Aceros*, 2025 WL 2637503 at *12 (citing *Singh*, 2025 WL 1918679, at *8). Ms. Orozco Acosta is already subject to full removal proceedings, and Respondents conceded at the preliminary injunction hearing that those proceedings remain active. A pre-deprivation bond hearing will not interfere with those proceedings. Moreover, detention for its own sake is not a legitimate governmental interest. *Pinchi*, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

### B. Petitioner Is Likely to Suffer Irreparable Harm Absent Injunctive Relief

There can be no question that Ms. Orozco Acosta is likely to suffer irreparable harm in the absence of a preliminary injunction. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). Ms. Orozco Acosta was arrested less than two weeks ago without any pre-detention hearing, she is currently out of ICE custody only because of a court order, and there is no reason to believe that the government will not immediately re-detain her as soon as the TRO expires. She thus has shown a clear likelihood of irreparable harm.

### C. The Balance of Equities and the Public Interest Favor Ms. Orozco Acosta

"[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (internal quotations and citations omitted); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (quoting *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir. 2020)) ("It is always in the public interest to prevent the violation of a party's constitutional rights.")). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with . . . a conflict between financial concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996.

As other courts in this district have concluded in similar circumstances, the potential harm to Ms. Orozco Acosta is significant: she faces immediate and potentially prolonged ICE detention. Meanwhile, the potential harm to the government is minimal. The only potential injury Respondents face is a short delay in detaining Petitioner if a neutral decisionmaker ultimately finds by a preponderance of the evidence that her detention is necessary to prevent danger to the community or that she presents a flight risk. *See Pinchi*, 792 F. Supp. 3d at 1037–38; *Calderon*, 2025 WL 2430609, at *5. The government cites its interest in "the steady enforcement of its immigration laws," Dkt. No. 9 at 31, but as in similar cases, "it does not explain how holding a pre-detention bond hearing interferes with this end." *Salcedo Aceros*, 2025 WL 2637503, at *14. The Court agrees with other courts in this district that "[i]f anything, it is the Government that has thrown into turmoil the steady enforcement of immigration law through repeated, highly public arrests in courtroom hallways." *Id.* The Court therefore finds that the balance of the equities tips sharply in Ms. Orozco Acosta's favor.

## IV. SECURITY

Federal Rule of Civil Procedure 65(c) provides that a court "may issue a preliminary

8

injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citing *Barahona–Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir.1999)).  Because the Court "concludes there is no realistic likelihood of harm" to the Government from enjoining its conduct, *id.*, the Court finds no security is required here.  *See, e.g., Ramirez Clavijo*, 2025 WL 2419263, at *9.

## V.   CONCLUSION

Petitioner's request for a preliminary injunction is **GRANTED**.  The government is **ENJOINED AND RESTRAINED** from re-detaining Ms. Orozco Acosta in any form (including, but not limited to, for purposes of executing a removal) without notice and a pre-deprivation hearing before a neutral decisionmaker.  This Order shall remain in effect until further order of the Court.

**IT IS SO ORDERED.**

Dated:  11/19/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

9